**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Griffin Charron, ) | No. CIV-04-2959-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Susan Griffin Charron seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying her claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I.**

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act wherein she alleged an onset date of November 25, 1996. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing on July 19, 1999, the ALJ issued a decision on September 13, 1999, finding that Plaintiff was not disabled within the meaning of the Act. Plaintiff sought review of the ALJ's decision. The Appeals Council did not grant

1 Plaintiff's request for review and the decision became final. Plaintiff commenced an action
2 for review in this Court pursuant to 42 U.S.C. § 405(g).

3     On June 22, 2001, the Court remanded the case, pursuant to sentence 6 of 42 U.S.C.
4 § 405(g), because the administrative record could not be located in a timely manner. On
5 April 29, 2003, based on a stipulation between the parties, the case was remanded pursuant
6 to sentence 4 of § 405(g) for a new administrative hearing. On remand, the ALJ was to
7 reconsider and weigh the opinion of Gerald Webster; address the evidence provided by
8 Plaintiff's chiropractor; and address and weigh the lay witness evidence.

9     The ALJ held a hearing on December 1, 2003 in which Plaintiff, her attorney, and a
10 vocational expert were present. At the time of the December 1, 2003 hearing, Plaintiff had
11 amended her application to seek a "closed period" of disability from November 25, 1996 to
12 September 13, 1999. Plaintiff had amended her application because she had filed a
13 subsequent Title II application for which she had been awarded benefits beginning
14 September 14, 1999. On April 23, 2004, the ALJ issued an unfavorable decision.

15     Plaintiff sought review of the ALJ's unfavorable decision. The Appeals Council
16 declined to assume jurisdiction, however, and the ALJ's decision became the final decision
17 of the Commissioner.

18     Plaintiff timely filed a complaint for judicial review in this Court. (Doc.1). Defendant
19 has filed an answer and a certified copy of the transcript of record. (Doc. 3). Plaintiff has
20 filed a motion for summary judgment supported by a statement of facts and memorandum
21 of points and authorities. (Doc. 4). Defendant has filed a cross-motion for summary judgment
22 (Doc. 5) supported by a statement of facts (Doc. 6) and memorandum of points and
23 authorities. (Doc. 7). Plaintiff has filed a response to Defendant's motion for summary
24 judgment. (Doc. 8).

25                                 **II.**

26                            **Standard of Review**

27     This Court must affirm the ALJ's findings if they are supported by substantial
28 evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.

1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a "medically severe impairment or combination of impairments";

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

## III.

## **Background Facts**

Plaintiff was 44 years of age at the time of the ALJ's decision on April 23, 2004. Plaintiff holds a B.S. degree in Business Administration and has worked as an escrow secretary, account service representative, finance manager, real estate secretary, child care worker, fast food worker, housekeeper, and caterer. Plaintiff alleges that she became disabled on November 25, 1996 due to chronic fatigue and chronic migraine headaches.

On December 1996, W. Keith Horne, a chiropractor, reported that Plaintiff was currently suffering from nausea, dizziness, ear and head pain. Dr. Horne asked that Plaintiff be excused from work and other stressful situations because she suffered from nausea, dizziness, and ear and head aches.

Plaintiff began receiving medical treatment at the White Mountain Family Practice beginning in December 1996. On January 3, 1997, a nurse practitioner ("J. Evans") noted that Plaintiff was suffering from a variety of symptoms, including dizziness, blurred vision, ringing in the ears, headache, and diarrhea. The impressions were acute migraine headaches with dehydration, chronic dizziness and nausea, and right sinusitis. The nurse practitioner indicated that Plaintiff appeared ill but she did not appear to be in "any acute life threatening distress at this time." Three days later, Plaintiff returned to the facility and the nurse wrote a note releasing Plaintiff from work. No reason was stated for this release. The ALJ's findings reference an indication of Epstein-Barr on January 23, 1997. (Transcript p. 332).

On January 29 and 30, 1997, Plaintiff was treated at the Tucson Medical emergency room complaining of dizziness, headaches and ringing in the ears. The emergency room physician diagnosed Plaintiff with probable labyrinthitis (inflammation of the inner ear). A February 10, 1997 a magnetic resonance imaging ("MRI") of Plaintiff's brain indicated normal results.

Plaintiff was treated at the Navapache Regional Medical Center emergency room on February 12, 1997. Plaintiff complained of three months of dizziness and right ear pain. Plaintiff was diagnosed with a migraine headache.

- 4 -

1   Plaintiff received treatment at the Blue Ridge Medical Clinic between November 1996
2 and August 1997 for ringing in right ear, depression, clogged left ear, dizziness and migraine
3 headache. She received treatment at Maricopa Medical Center during January 1997 through
4 September 1997 for tinnitus in both ears and migraine headaches.

5   At the request of the Commissioner, a mental status examination of Plaintiff was
6 conducted by Gerald Webster, Ed.D., and Ronn Lavit, Ph.D., on January 23, 1998. Plaintiff
7 reported that her best friend had died in 1995 and her brother had died in 1996. Dr. Webster
8 diagnosed Plaintiff as having chronic bereavement and rule out mood disorder due to a
9 medical condition. Dr. Webster expressed the opinion that Plaintiff was seriously limited,
10 but not precluded from following work rules; dealing with the public, dealing with work
11 stress; maintaining concentration and attention; understanding, remembering, and carrying
12 out complex job instructions; behaving in an emotionally stable manner; and demonstrating
13 reliability.

14   Gordon Josephs, M.D., reported on March 18, 1998, that beginning about November
15 1996, Plaintiff developed blocked ears, dizziness, poor balance, nausea and vomiting, and
16 headaches. Testing revealed a positive Epstein-Barr Titer. Plaintiff was bedridden for four
17 months.

18   Medical records of M. Lynass, M.D., showed that Plaintiff had received treatment
19 between November 1997 through April 1998 for migraine headaches, and other symptoms.
20 Dr. Paul DeLoe, naturopathic physician, reported on June 2, 1998 that Plaintiff had asthma,
21 chronic fatigue syndrome and migraines.

22   Plaintiff was examined on July 31, 1998, by Napoleon Ortiz, M.D., a consultative
23 physician. Plaintiff presented with diffuse muscle aches and weaknesses, a protracted
24 headache history and alleged chronic fatigue syndrome. Plaintiff reported that she could lift
25 20 to 25 pounds at a time. Dr. Ortiz expressed the opinion that Plaintiff appeared to have
26 myalgias (muscle pain) and some weaknesses, but that she could be medically managed
27 optimally. Dr. Ortiz stated that it was difficult to state Plaintiff's level of impairment because
28 "clinically, she is probably within normal limits."

1      In January 1999, Plaintiff was treated at the Navapache emergency room complaining of upper back pain. Back x-rays revealed normal results. Dr. Susan Davies prescribed nonsteroidal anti-inflammatories and a muscle relaxer.

       Plaintiff returned to the Navapache emergency room on February 8, 1999 complaining of abdominal pain. She was diagnosed with peptic ulcer and cholelithiasis (gallstones). A March 19, 1999 ultrasound revealed that Plaintiff had multiple gallstones. On March 29, 1999, Dr. William Waldo operated on Plaintiff and removed the gallstones.

       On April 22, 1999, Plaintiff again went to the Navapache emergency room for treatment, complaining of headaches. The attending physician issued a verbal order to give Plaintiff 90 mg. of Toradol which in the past had proved beneficial. The records show that Plaintiff left the hospital before the attending physician could physically examine her.

       On May 18, 1999, Plaintiff was treated by Jim Evans, M.D., who indicated probable migraines and depression, and suggested that Plaintiff "quit smoking." On June 29, 1999, Dr. Evans' notes indicate that on this date, Plaintiff related that she has had "chronic fatigue for three years and cannot work secondary to this." Dr. Evans reported that he believed that Plaintiff's impairments of chronic fatigue, depression, migraines, chronic bronchitis, and nicotine overuse were "disabling," but "unfortunately, these are subjective findings and I am not able to quantitate the degree of disability."

                           <u>The July 19, 1999 Hearing</u>.

       At the July 1999 hearing, Plaintiff testified that she last worked in 1996 as an escrow secretary. Plaintiff claimed that she became ill and unable to work. Plaintiff testified that she has migraine headaches two or three times a day almost daily with no warning and muscle pain in her legs and arms. Plaintiff testified that the medication Midrin helped her initial migraine headaches. Subsequent medications also have been helpful. Plaintiff said that her short-term memory was very impaired. Plaintiff testified that she wakes up two or three times a night but fairly easily falls back asleep and she occasionally has a sore throat. Plaintiff stated that her depression had remained about the same.

Plaintiff testified that about two and one-half years after she stopped working as an escrow secretary, she opened a retail store in April 1998 in Lakeside. The store closed a year later. Plaintiff had the help of her mother and a partner. She also employed someone to manage the business although Plaintiff went to the store occasionally part-time. The business involved Mexican imports and Plaintiff traveled to Mexico three times with her mother to buy merchandise for the store. These trips occurred in April, July and November 1998. Plaintiff testified there were times in the last two and one-half years that she felt pretty good, the headaches were not too bad and the fatigue was gone. However, the fatigue all of a sudden returned. Plaintiff testified that her mother has traveled from Tucson to do laundry and take care of Plaintiff's daughter. Plaintiff only worked on the computer when she felt able.

The ALJ read from the psychological report dated February 1998 that Plaintiff's daily activities included taking her daughter to school, returning to bed for a couple of hours, spending time on the computer and doing crafts, and picking her daughter up from school in the afternoon. Plaintiff watches television and does crafts in the evening and retires at around 11:00 p.m. Plaintiff also reported spending time on the computer and day trading stocks beginning in 1997 or 1998.

Charles F. Bahn, M.D., offered testimony as a medical advisor. Dr. Bahn testified that he did not find a typical migraine history partly reflecting on the questions he had asked Plaintiff. Plaintiff's impairments, including migraine headaches, bereavement and depression, did not meet or medically equal any listing. Dr. Bahn testified that he could not rule out that Plaintiff suffers from chronic fatigue syndrome. Dr. Bahn testified that he had "a little problem" with enough objective findings, signs and symptoms to totally support the diagnosis for chronic fatigue syndrome with an Epstein-Barr virus. Dr. Bahn found a medical record that indicated exposure to Epstein-Barr but it was not diagnostic. Dr. Bahn also testified that the medical records were compatible with tension headaches. Migraine headaches typically do not come on two or three times a day. People often complain of flashing lights, of yellow vision, as an indication they are about to have a migraine headache.

1 Dr. Bahn expressed the opinion that Plaintiff retained the residual functional capacity to
2 perform a full range of light work. Dr. Bahn stated that Plaintiff would need a job with
3 considerable flexibility so that she could take a break and rest or go see her doctor.

The December 1, 2003 Hearing.

5 Plaintiff testified that she has severe headaches, one to two migraine headaches daily,
6 and dizziness. A physician's assistant took Plaintiff 's information and decided she probably
7 had chronic fatigue. An Epstein-Barr test was positive. On good days, Plaintiff can wash
8 dishes and clothes and keep house. On bad days, Plaintiff remains in bed. Plaintiff described
9 opening her Mexican import business with assistance from her mother. Plaintiff also testified
10 that she suffered from depression during the period of time of the alleged disability. In 1996,
11 Plaintiff's daughter was eight years old. Plaintiff separated from her husband in 1996.
12 Plaintiff claimed that she went to the Navapache Hospital emergency room twice a month
13 but perhaps not every month. Plaintiff clarified that she may have gone once every two
14 months to the emergency room. Plaintiff testified that she took the law school entrance exam
15 in 1997 or 1998 but could not concentrate. Plaintiff lived in the Pinetop area when she
16 opened her retail store in 1998. The store was open five days a week and Plaintiff was at the
17 store perhaps three days a week. Plaintiff described her activities on the computer and her
18 handicrafts in 1998. Plaintiff testified that she went to craft shows maybe six times a year
19 in 1998. Plaintiff testified that her mother provided most of the care for her daughter during
20 1996 and 1997.

21 A vocational expert testified in response to a hypothetical question that a person with
22 Plaintiff's education, age and vocational background, who can perform light skilled work
23 with moderate limits on concentration, persistence and pace, could perform work as a
24 hostess. Assuming this same hypothetical as modified regarding unskilled work indicated
25 work as a companion. Based on another assumption of this same hypothetical question
26 modified to include a person who could perform sedentary work with moderate limits on
27 concentration, pace and persistence, a person could perform work as a telephone solicitor
28 outbound.

- 8 -

## The ALJ's Conclusions.

The ALJ found that Plaintiff met the insured status requirements from November 25, 1996 through September 13, 1999, the alleged disability period, and that she had not engaged in substantial gainful activity during this period. The ALJ found that Plaintiff's chronic fatigue syndrome, chronic migraine headaches, mood disorder, depression, and headaches are severe impairments but that these impairments did not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ found not totally credible Plaintiff's testimony regarding the period of November 25, 1996 through September 13, 1999. The ALJ determined that during the relevant closed period, Plaintiff retained the physical residual functional capacity to perform a full range of light work and that she was able to understand, remember, and carry out simple one- to two-step instructions, to maintain concentration and attention for simple repetitive work, and to tolerate low stress work. The ALJ further determined that Plaintiff could work cooperatively, interact with peers, the public and supervisors, and to travel, avoid hazards and to complete a normal work week within her physical limitations.

The ALJ found that Plaintiff's physical impairments prevented her from performing her past relevant work. The ALJ noted that Plaintiff was 44 years of age at the time of decision and had earned a Bachelor's degree in business administration. Plaintiff had no transferable skills to perform other work. The ALJ found that Plaintiff nonetheless retained the residual functional capacity to perform other work. The ALJ concluded that during the relevant period Plaintiff was not disabled.

In reaching her findings and conclusions, the ALJ stated that she had reviewed all of the documentary evidence of record and considered fully the testimony given at the hearing. The ALJ summarized the medical evidence of record in her findings. In reaching the conclusion that Plaintiff was not disabled during the relevant period, the ALJ found that the objective evidence outlined in her decision failed to establish that Plaintiff's impairments imposed significant limitations on her ability to perform work-related activities. The ALJ

1  cited the evidence that indicated that following Plaintiff's period of being bed-ridden, her
2  medical problems were intermittent and not of the severity to cause ongoing limitations.

3  The ALJ noted that in August 1998, Dr. Ortiz had reported that it was difficult to state
4  Plaintiff's level of impairment because clinically she was within normal limits. The ALJ
5  found Dr. Webster's residual functional capacity assessment of Plaintiff too stringent in light
6  of Plaintiff's range of daily activities including lengthy periods of time on the computer daily
7  and stock trading on the computer. The ALJ relied on the testimony of Dr. Bahn that there
8  was not enough evidence to support the diagnosis of chronic fatigue syndrome and that
9  Plaintiff had the residual functional capacity for a full range of light work. Dr. Bahn's
10 findings were consistent with Dr. Ortiz's statement that any person with positive exposure
11 to Epstein-Barr could still function even with chronic fatigue syndrome. The ALJ accorded
12 particular weight to the residual functional capacity assessments completed by the state
13 agency physicians.

14 The ALJ explained why she found not fully credible Plaintiff's allegations concerning
15 her impairments' impact on her ability to perform work-related activities for the relevant
16 period. Medical records were not consistent with Plaintiff's testimony regarding visits to the
17 Navapache Regional Medical Center. Plaintiff also had admitted that she used her own
18 savings to open and operate her Mexican import store.

## IV.

### Discussion

21 Plaintiff contends that the ALJ erred by not giving correct weight to the assessment
22 of her treating physicians, Dr. Horne and Dr. Jim Evans. Plaintiff also contends that the ALJ
23 misinterpreted the evidence by rejecting the opinion of Dr. Webster, the psychologist who
24 examined her at the request of the Social Security Administration.

25 Plaintiff emphasizes that Dr. Horne issued a work release on December 30, 1996 and
26 that this opinion should have been given controlling weight by the ALJ. Plaintiff also
27 contends that there were no opinions from examining physicians during the relevant period
28 that she could perform full-time work. Defendant has responded that the opinions of Dr.

- 10 -

1  Horne and "J. Evans", a nurse practitioner, were not acceptable medical sources and the ALJ
2  had no duty to consider them.

3        In December 1996, Dr. Horne, a chiropractor, reported that Plaintiff was currently
4  suffering from nausea, dizziness, ear and head pain.  Dr. Horne requested that Plaintiff
5  should be excused from work and other stressful conditions because of these symptoms.  In
6  January 1997, "J. Evans," a nurse practitioner, asked that Plaintiff be relieved from work
7  until further notice. Dr. Horne, a chiropractor, and "J. Evans", a nurse practitioner, are not
8  considered acceptable medical sources under 20 C.F.R. §  404.1513(a). However, they are
9  considered "other sources" from whom evidence may be considered to show severity of a
10 claimed impairment. 20 C.F.R. § 404.1513. Under the regulations, consideration of a non-
11 acceptable medical source opinion is discretionary, not mandatory. Id.

12       The Court concludes that the ALJ erred by not affording more weight to the opinions
13 of the "other medical sources" based on a review of the medical evidence in this case.
14 Plaintiff's disability onset date is November 25, 1996.  Plaintiff claims disability due to
15 chronic fatigue and chronic migraine headaches. On March 18, 1998, Plaintiff was seen by
16 Dr. Joseph who noted that in November 1996 Plaintiff had complained of symptoms
17 indicating a possible "aegean virus" or "EBV" or Epstein-Barr.  It was around this time, that
18 is, November 1996,  that Plaintiff developed blocked ears, dizziness, poor balance,  nausea,
19 vomiting and headaches. (Transcript at p. 251). Dr. Joseph noted that Plaintiff had been
20 bedridden for four months. (id.). There is indication of Epstein-Barr in the medical records
21 in January 1997. The ALJ  erred in failing to properly consider the December 1996 opinion
22 of Dr. Horne as indication of severity of a claimed impairment.  Dr. Horne's opinion appears
23 to have occurred about the same time that Plaintiff was bedridden.

24       In January 1998, Dr. Webster, a consultative physician, conducted a mental status
25 examination of Plaintiff.  Dr. Webster 's assessment was chronic bereavement and ruled out
26 mood disorder due to a medical condition.  Dr. Webster expressed the opinion that Plaintiff
27 was seriously limited, but not precluded from following work rules; dealing with the public,
28 dealing  with  work  stress;  maintaining  concentration  and  attention;  understanding,

1  remembering, and carrying out complex job instructions; behaving in an emotionally stable

2  manner; and demonstrating reliability. The ALJ found Dr. Webster's opinion "restricted" and

3  contradicted by Plaintiff's own activities, stating findings on the issue as follows:

> ...[T]the undersigned finds that Dr. Webster's residual functional capacity assessment of the claimant was too stringent, based on his narrative report. Those limitations were mild to moderate and not severely limited. Claimant reportedly had a broad range of activities of daily living including lengthy periods of time on the computer daily, stock trading on computer (showed ability to concentrate and focus on detailed and complex instructions)...

8  (Transcript at p. 336).

9  An examining physician's opinion is afforded less weight than the opinion of a

10 treating physician but more weight than the opinion of a non-examining physician. Lawson

11 v. Massanari, 231 F. Supp. 2d 986, 996 (D. Or. 2001). An examining physician's opinion

12 based on independent clinical findings can constitute substantial evidence. Magallanes v.

13 Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

14 The Court concludes that the ALJ erred in rejecting the opinion of Dr. Webster as too

15 restrictive in light of the other medical evidence of record. The medical evidence shows that

16 Plaintiff began receiving medical treatment at the White Mountain Family Practice beginning

17 in December 1996. In January 1997, Plaintiff was treated at the Tucson Medical emergency

18 room complaining of dizziness, headaches, and ringing in the ears. There also was indication

19 of Epstein-Barr. Around February 12, 1997, Plaintiff was treated at the Navapache Regional

20 Medical Center complaining of three months of dizziness and right ear pain and she was

21 diagnosed with a migraine headache. Plaintiff was treated at the Blue Ridge Medical Clinic

22 between November 1996 and August 1997 for ringing in the right ear, depression, clogged

23 left ear, dizziness and migraine headache. Between January and September 1997, Plaintiff

24 was treated at the Maricopa Medical Center for tinnitius in both ears and migraine headaches.

25 The medical records of Dr. Lynass showed that Plaintiff had been treated for migraine

26 headaches and other symptoms between November 1997 through April 1998. In March

27 1998, Dr. Joseph reported that Plaintiff said she was exhausted and had muscle aches in her

28 arms and legs. Dr. Joseph's impression was "viral disease, likely EBV." At the hearing in

1  July 1999, Dr. Bahn, a medical advisor, testified that while the medical records indicated
2  tension headaches rather than migraine headaches, he could not rule out that Plaintiff suffers
3  from chronic fatigue syndrome.  Dr. Bahn further testified that Plaintiff would require a job
4  with considerable flexibility.

5       In this case, Dr. Webster's opinion was not contradicted by the opinion of another
6  physician.  Dr. Webster's opinion appears consistent with the other medical evidence for the
7  period between November 1996 and March 1998. The ALJ's reasons for rejecting Dr.
8  Webster's opinion are not supported by clear and convincing reasons or substantial evidence.
9  C.f., Lawson, 231 F. Supp. 2d at 996 (if an examining physician's opinion is not contradicted
10 by another physician, the ALJ may only reject it for clear and convincing  reasons; even if
11 contradicted by another physician, the ALJ may not reject the opinion without providing
12 specific and legitimate reasons supported by substantial evidence in the record.).

13      It further does not appear that the ALJ considered Plaintiff's testimony regarding pain
14 and suffering associated with Plaintiff's condition, including her chronic migraine headaches,
15 in light of the medical evidence during the period between November 1996 and March 1998.
16 Plaintiff testified that she has severe headaches daily, and dizziness, and that she remains in
17 bed on "bad days."  In order to discount claims of excess pain, the ALJ must make specific
18 findings justifying the decision which "must be supported by clear and convincing reasons
19 why the claimant's testimony of excess pain was not credible and must be supported by
20 substantial evidence in the record as a whole." Johnson v. Shalala, 60 F.3d 1428, 1433 (9th
21 Cir. 1995).  The ALJ may not disbelieve the claimant's testimony of pain "solely because the
22 degree of pain is not supported by objective medical evidence." Penny v. Sullivan, 2 F.3d
23 953, 957 (9th Cir. 1993).

24      Plaintiff also cites in her claim of error the June 29, 1999 chart note of Dr. Jim Evans
25 which indicated that she was unable to work due to her headache pain. Plaintiff contends that
26 this medical evidence should have been given controlling weight. Defendant has responded
27 that Dr. Evans did not actually state in the chart note that Plaintiff was unable to work.
28

1  Dr. Evans stated in the chart note that Plaintiff's impairments were "disabling."
2  However, Dr. Evans further stated that "unfortunately" these were subjective findings and
3  he was not "able to quantitate the degree of disability." While a treating physician's opinion
4  is generally given more weight, Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987), the
5  ALJ does not have to treat that opinion as conclusive. Morgan v. Commissioner of the Social
6  Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

7  In July 1998, Plaintiff was examined by Dr. Ortiz, a consultative physician. Dr. Ortiz
8  found that Plaintiff appeared to have some muscle aches and weaknesses but that she could
9  be managed optimally and that it was difficult to state Plaintiff's level of impairment because
10 "clinically" she was within normal limits.

11 Plaintiff testified at the July 1999 hearing that she started a Mexican import business
12 in April 1998 and worked on a part-time basis with her mother and another employee.
13 Plaintiff also had traveled to Mexico in April, July and November 1998 to obtain
14 merchandise for her business. Plaintiff testified that her activities included making crafts and
15 working on the computer. Plaintiff's business closed a year later. Plaintiff testified that there
16 were times over the preceding two-and-one-half years that she felt pretty good, the headaches
17 were not too bad and the fatigue was gone.

18 It does not appear that the ALJ erred in not affording more weight to the opinion of
19 Dr. Evans. Dr. Evans' opinion was not based on diagnostic or clinical medical evaluation.
20 Dr. Ortiz expressed the opinion approximately a year earlier that Plaintiff's condition could
21 be managed and was probably within normal limits. Dr. Ortiz' opinion was consistent with
22 Plaintiff's testimony that her condition had seemed to improve. Plaintiff's activities during
23 this period included her Mexican import business which had closed around April 1999. In
24 addition, during this period, Plaintiff had been treated for upper back pain and gallstones. In
25 April 1999, Plaintiff had complained of headaches at the Navapache emergency room but
26 had left the hospital before the attending physician could physically examine her. See
27 Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004)(the ALJ need
28 not fully credit opinions of treating physician where opinions do not have supporting

- 14 -

1 objective evidence, are contradicted by other medical evidence and are based on patient's
2 subjective descriptions of symptoms). The ALJ therefore gave proper consideration to Dr.
3 Evans' chart note in light of the other medical evidence and Plaintiff's testimony.

Based on this Court's findings that the ALJ erred in the evaluation of the medical opinions of Dr. Horne and Dr. Webster, the Court has concluded that remand for further corrective proceedings is not warranted.  Rather, the Court concludes in its discretion that Plaintiff is entitled to payment of benefits for part of the period of claimed disability.  In reaching this conclusion, the Court has considered whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, if the improperly rejected evidence were credited, the ALJ would be required to find Plaintiff disabled for the period of November 25, 1996 through March 1998. There is substantial medical evidence of record as discussed above on which to base the finding that Plaintiff was disabled during that period.  There are no outstanding issues that must be resolved before a determination of disability can be made as to this limited period.

**Accordingly,**

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 4)  is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc. 5) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Commissioner's decision to deny benefits for the period of November 25, 1996 through March 1998 is reversed and this matter is remanded for calculation and payment of benefits in a manner consistent with this Order.

**IT IS FURTHER ORDERED** that the Commissioner's decision to deny benefits for the period of April 1998 through September 13, 1999 is affirmed.

1    **IT IS FURTHER ORDERED** that Judgment shall be entered consistent with this
2 Order.
3    DATED this 27th day of March, 2006.

_____
Mary H. Murguia
United States District Judge